UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERGO LICENSING, LLC, ) | |
| ) | |
|       Plaintiff ) | |
| ) | |
| v. ) | Civil No. 08-259-P-S |
| ) | |
| CARDINAL HEALTH, INC., et al., ) | |
| ) | |
|       Defendants ) | |

*RECOMMENDED DECISION ON MOTIONS TO DISMISS AND TO CHANGE VENUE*

In this patent infringement action, one of the two defendants, Cardinal Health, Inc. ("CHI"), moves to dismiss this action as against it. The other defendant, Cardinal Health 303, Inc. ("CH303"), moves to transfer this case from this court to the Southern District of California. I recommend that the court grant the motion to dismiss and deny the motion to change venue.

### I.  Motion to Dismiss

### A.  Applicable Legal Standard

CHI moves to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(2). Defendant Cardinal Health, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Motion to Dismiss") (Docket No. 30) at 1. A motion brought under this subsection of Rule 12 alleges lack of personal jurisdiction. Such a motion raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F. Supp. 366, 367 (D. Me. 1992) (citation and internal quotation marks omitted).

1

The plaintiff bears the burden of establishing jurisdiction; however, where (as here) the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a *prima facie* showing suffices. *Archibald v. Archibald*, 826 F. Supp. 26, 28 (D. Me. 1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992). However, for purposes of considering a Rule 12(b)(2) motion, the court will accept properly supported proffers of evidence as true. *Id*.

In an action for patent infringement like this one, *see* First Amended Complaint (Docket No. 20) ¶ 5, the court's authority to exercise personal jurisdiction over a non-resident defendant is governed by the case law of the Federal Circuit. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). That court makes a two-step inquiry: first, whether the defendant is amenable to process, which usually depends on "whether the defendant could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located[,]" and, second, whether exercise of the court's jurisdiction would not offend "traditional notions of fair play and substantial justice that are embodied in the Due Process Clause." *Id*. (citations and internal quotation marks omitted). The first inquiry has also been expressed as follows: "jurisdiction must exist under the forum state's long-arm statute." *Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139 (Fed. Cir. 2008). Federal law controls the second inquiry. *Id*. As to the first inquiry, the reach of Maine's long-arm statute, 14 M.R.S.A. § 704-A, is co-extensive with the permissible exercise of personal jurisdiction under the federal Constitution. *Tice v. Taiwan Shin Yeh Enter. Co*., 608 F.Supp.2d 119, 121-22 (D. Me. 2009).

The Maine Law Court has determined that

> before exercising its jurisdiction over an out-of-state defendant, the court
> must conclude that (1) Maine has a legitimate interest in the subject

2

>matter of this action; (2) the defendant, by its conduct, should reasonably have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts would comport with traditional notions of fair play and substantial justice.

*Frazier v. BankAmerica Int'l*, 593 A.2d 661, 662 (Me. 1991). Once the plaintiff demonstrates, based on specific facts set forth in the record that are construed in a light most favorable to the plaintiff, that Maine has a legitimate interest in the controversy and that the requisite minimum contacts exist such that the defendant should reasonably expect litigation in this state, the burden shifts to the defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice. *Id*.

Due process requires that each defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Minimum contacts are determined by whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To establish personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate that the defendant is subject either to "general" jurisdiction or "specific" jurisdiction. "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 288 (1st Cir. 1999) (citations omitted). Absent general jurisdiction, this court may still assume jurisdiction if the claim

3

"relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Id*. That is "specific" jurisdiction.

## II. Factual Background

The complaint includes the following relevant factual allegations.

The plaintiff is "a Maine-based licensing company owned by a professor of medical engineering at a prestigious German university." First Amended Complaint ¶ 1. Defendant CHI is a Delaware corporation with a principal place of business in Dublin, Ohio. *Id*. ¶ 3. Defendant CH303 is a Delaware corporation with a principal place of business in San Diego, California. *Id*. ¶ 4. CH303 is a successor of Alaris Medical Systems, Inc., which was acquired by CHI in 2004. *Id*.

Before June 19, 1993, Dr. Hölscher, the owner of the plaintiff, Elbert Holger, Bernt Klinger, and Matthias Heimermann invented a multi-channel fluid delivery system for medical infusion applications. *Id*. ¶ 8. After receiving a German patent, the inventors applied for a United States patent on June 14, 1994. *Id*. United States Patent No. 5,507,412 (the "'412 patent") was issued on April 16, 1996, to Dr. Hölscher and his colleagues for this invention. *Id*. ¶ 9. Pursuant to an assignment dated March 8, 1999, Dr. Hölscher became and continues to be the sole owner of this patent. ¶ 10. The patent is valid and enforceable. *Id*. ¶ 11. The plaintiff is the exclusive licensee for the United States granted the rights to license and enforce the '412 patent. *Id*. ¶ 12.

On May 15, 1995, Alaris filed Patent Application Serial No. 08/440871 for an automated infusion system with dose rate calculator. *Id*. ¶ 13. The patent examiner initially rejected the Alaris application as lacking novelty over the '412 patent because Alaris's system possessed the same features as those claimed by the '412 patent. *Id*. On October 4, 1996, Alaris responded to

4

the rejection by amending its claims to add additional features and by contending that the additional features made its invention novel. *Id*. On June 30, 1998, Alaris received United States Patent No. 5,772,635 (the "'635 patent") for its claimed invention. *Id*.

Alaris began infringing the '412 patent by making, using, selling, and offering for sale infusion systems covered by the '412 patent, such as the Alaris Medley™ Medication Safety System (8100 Series). *Id*. ¶ 14. CHI acquired Alaris in 2004 and formed CH303, and both CHI and CH303 continued making, using, offering for sale, and selling the infringing Alaris systems. *Id*. ¶ 15.

Dr. Hölscher corresponded directly with members of CHI's legal department in Ohio as recently as December 2005 to bring the infringement to CHI's attention and to offer reasonable licensing terms to CHI. *Id*. ¶ 16. The plaintiff corresponded directly with members of CHI's legal department in 2008 to remind CHI of the continued infringement and to renew the offer of reasonable licensing terms. *Id*. ¶ 17. The defendants have not obtained a license and continue to infringe the '412 patent. *Id*. ¶ 18.

### III. Discussion

The plaintiff apparently contends only that this court has specific personal jurisdiction over CHI, not general personal jurisdiction. Opposition to Motion to Dismiss Cardinal Health, Inc. ("Dismissal Opposition") (Docket No. 53) at 13-20. To the extent that the plaintiff means to argue that this court may also exercise general personal jurisdiction over CHI, I recommend that the court reject that argument, for the reasons that follow.

### A. Purposeful Availment

CHI first argues that it has not purposely availed itself of the privilege of conducting activities in Maine, nor has it purposefully directed its activities at residents of Maine. Motion at

5-6. This is so, it asserts, because it "does not operate, conduct, engage in, or carry out any business in Maine at all[,]" has not designated a registered agent in Maine, and "simply does not engage in the type of activity prohibited by the patent laws." *Id*. "The purposeful availment prong of the personal jurisdiction test is satisfied if a defendant has performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Auburn Mfg., Inc. v. Steiner Indus.*, 493 F.Supp.2d 123, 130 (D. Me. 2007).

The plaintiff responds that CHI "has made numerous filings in Maine enabling its subsidiaries, CH303 and Cardinal Health Solutions, Inc., to conduct the infringement in Maine." Dismissal Opposition at 14. The attorney who filed the application for authority to do business in Maine on behalf of the CHI subsidiaries that conduct the Alaris sales and service in Maine was "CHI's attorney." *Id*. at 15. The applications "originate from CHI's company headquarters," and every year CHI files an annual report with the Maine secretary of state on behalf of CH303 and Cardinal Health Solutions, Inc. *Id*. The reports all list CHI officers as officers of these subsidiaries. *Id*. Finally, the plaintiff contends that CHI, "the entity with the ultimate control," should be held to answer for the conduct of its subsidiary, CH 303. *Id*. at 15-16.[1]

The plaintiff cites only two cases in support of its argument, *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998), and *IP Innovation, L.L.C. v. RealNetworks, Inc.*, 310 F.Supp.2d 1209 (W.D. Wash. 2004). *Id*. at 17-18. Each is distinguishable. Indeed, the relevant holding in the latter relies entirely on the former as authority. 310 F.Supp.2d at 1212.[2] As I noted in my order granting the plaintiff's motion for jurisdictional discovery in this case,

---

[1] The plaintiff also asserts that "CHI officers (Schlotterbeck and Winstead) make the operational decisions for the subsidiaries[,]" Dismissal Opposition at 15, but cites no record authority for this factual averment.
[2] Not surprisingly, the plaintiff quotes, Dismissal Opposition at 18, the following interpretation of *Dainippon* by the *IP* court: "A subsidiary company's contacts with the forum state may be imputed to the parent company where the

> [t]he Federal Circuit . . . not[ed] that the agents of the defendants who engaged in the licensing negotiations between the parties all were employed by or held positions at both companies and that the licensing agreement between the defendants specified that the power to negotiate a sublicense or to instigate litigation rested with the subsidiary corporation. The court held that the actions of these individuals were thus attributable to the subsidiary holding company. When this conclusion was coupled with the facts that the parent corporation was licensed by the subsidiary to make and sell the products covered by the patent at issue; that the parent maintained sales agents in the forum state; that the parent derived substantial revenue from sales in the forum state; and, that the subsidiary had attempted to negotiate a sublicense with the plaintiff in the forum state, the court held that the imposition of personal jurisdiction over the subsidiary holding company in the forum state was justified.
>
> Also important to the Federal Circuit in *Dainippon* was the policy conclusion that creation of a wholly-owned subsidiary "cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction[.]"

Memorandum Decision on Plaintiff's Motion for Jurisdictional Discovery (Docket No. 47) at 4-5 (citations omitted).

In the instant case, it is now apparent from the pleadings and the parties' memoranda that there is no licensing or other arrangement between CHI and CH303 with respect to the patent at issue or the Alaris system; that the Alaris system existed independently of either defendant before it was acquired by CHI, and CHI acquired Alaris as an existing corporation; that neither CHI nor CH303 holds the patent at issue, so the ability to instigate litigation or to sublicense with respect to that patent is not relevant; that CHI does not maintain sales agents in Maine and has not itself attempted to license or sell the Alaris system in Maine; and that CHI does not itself purport to operate under the Alaris patent or to engage in activities in Maine sufficient to create

---

subsidiary was established for, or is engaged in, activities that the parent would have to undertake if not for the subsidiary's involvement." 310 F.Supp.2d at 1212. This interpretation reads more into *Dainippon* than appears to me to be warranted and would, if uniformly applied, void any legal distinction between a parent company and its subsidiary in all cases involving patents, a much too drastic result for the situation that the *Dainippon* court addressed.

personal jurisdiction here unless CH303's activities are imputed to it. Accordingly, *Dainippon* does not require this court to find that the plaintiff has established the first prong of the Federal Circuit's test for personal jurisdiction.

This conclusion is reinforced by additional considerations. The facts that a lawyer identified by the plaintiff as "CHI's attorney," Dismissal Opposition at 15, also filed CH303's application for authority to do business in Maine,[3] which application "originate[d] from CHI's company headquarters," that each year CHI files an annual report "on behalf of CH303" with the Maine secretary of state, listing CHI officers as officers of CH303, and that officers of CHI also serve as officers of CH303 do not mean that CHI has thereby purposefully directed its activities toward Maine or that CHI has purposefully availed itself of the privilege of doing business in Maine. *American Med. Sys., Inc. v. Biolitec, Inc.*, 604 F.Supp.2d 325, 329-30 (D. Mass. 2009) (individuals are presumed to be acting as employees of corporation for which they act unless shown to be acting in fact for related corporation); *Hill-Rom Servs., Inc. v. Verses Tech., Inc.*, 2006 WL 1540851 (M.D.N.C. June 2, 2206), at *8 (where no evidence that corporate parent exercises control over activities of subsidiaries or oversees subsidiaries' manufacture or distribution of allegedly infringing product, court has no personal jurisdiction over corporate parent); *QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 663 (E.D.Tex. 2007) (100% ownership and identity of directors and officers insufficient to establish corporate parent as alter ego of subsidiary).

Nor does the existence of services shared by the subsidiary and its corporate parent – here, "many significant support functions[4] . . . including intellectual property support," Dismissal

---

[3] A parent corporation's legal department may represent a subsidiary without subjecting the parent to jurisdiction. *Rapp v. Walt Disney Company*, 1998 WL 564491 (E.D.Pa. Sept. 3, 1998), at *3 (and cases cited therein).
[4] Presumably, this is a reference to "certain legal functions[,] . . . [t]he corporate and securities function[,] . . . the mergers and acquisitions function[,] . . . [t]he Labor & Employment function[,] . . . certain HR functions[,] . . . some

Opposition at 17 – mean that the parent has thereby purposely directed its activities toward the state where jurisdiction over the subsidiary exists. *See, e.g., QR Spex*, 507 F.Supp.2d at 663 (ownership of 100% of subsidiary's stock, common officers, control over marketing and advertising of subsidiary's products insufficient to subject corporate parent to personal jurisdiction). The plaintiff also asserts that "CHI maintains and controls one website, which displays the user's manual for the Alaris system," Dismissal Opposition at 20, but the use of a single website for both a corporate parent and its subsidiaries, particularly where, as here, the website is passive -- not allowing purchase of the allegedly infringing Alaris system and not listing its price, Declaration of James Mazzola (Attachment 1 to Docket No. 30) ¶ 4 -- is not sufficient to confer personal jurisdiction. *See Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005).[5]

The plaintiff also contends that CHI derives "substantial revenues" from sales of the Alaris system and distributes dividends from those profits to its shareholders, and that these facts empower this court to exercise jurisdiction over CHI with respect to the allegedly infringing product. Dismissal Opposition at 19. Again, the plaintiff cites no evidence in the record to support this assertion. If it means to refer to its recitation of facts on pages 6 and 7 of its motion, it asserts there that CHI makes consolidated financial statements and reports for all of its subsidiaries, "explains that its increases in profitability [in 2007] 'resulted primarily from revenue growth within the Pyxis and Alaris product lines,'" disburses some of CH303's profits to CHI shareholders as dividends, and creates a consolidated budget for all of its subsidiaries. *Id*.

---

Finance functions[,] . . . financial reporting[, and] . . . some IT functions . . . ." Dismissal Opposition at 6. The plaintiff does not provide any evidence that all of these "functions" are used by CH303. The "securities function" and the "mergers and acquisitions function," for example, do not appear from the record to be necessary to CH303's business activities.

[5] The plaintiff asserts that "CHI also enters into contracts involving the Alaris System[,]" Dismissal Opposition at 18, but provides no citation to evidence supporting this assertion.

at 6-7. But, consolidated SEC filings do not overcome the presumption of corporate separateness. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346-47 (5th Cir. 2004). Financial oversight of the subsidiary by the parent corporation does not provide a basis for the exercise of personal jurisdiction over the parent. *Hill-Rom*, 2006 WL 1540851, at *8 n.16. And, financial benefits accruing to a corporate parent from a subsidiary's relationship to the forum state will not support the exercise of jurisdiction over the parent in that forum if the parent does not itself have a "constitutionally cognizable contact" with that forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *see also Red Wing*, 148 F.3d at 1361-62.

The same is true of the plaintiff's argument based on CHI's issuing of press releases "including those describing the accused Alaris System," that refer to "Cardinal Health" as a single company. Dismissal Opposition at 17. *See QR Spex*, 507 F.Supp.2d at 663 (control over marketing and advertising of subsidiary's products insufficient to support exercise of jurisdiction over parent); *American Med. Sys.*, 604 F.Supp.2d at 329 (common marketing by parent and subsidiary not sufficient). A parent corporation cannot be held to have submitted itself to the jurisdiction of the courts in a state in which its subsidiary is subject to such jurisdiction merely by referring to itself in public as a single corporation that produces the product actually produced by the subsidiary. Such a premise would create a significant trap for the unwary not justified on any discernable policy basis.

Finally, the plaintiff asserts that CHI "had a substantial role in deciding to continue making and selling the accused Alaris [system] after receiving written notice from Dr. Hölscher."[6] Dismissal Opposition at 19. According to the plaintiff, this makes it "important that

---

[6] The plaintiff refers to this notice as "written notice from CHI, not CH303," Dismissal Opposition at 20, but that cannot be correct.

CHI be kept in this case." *Id*. As support for the quoted factual assertion, the plaintiff merely cites "Exhs. T-W." *Id*. Exhibits T-U to the plaintiff's memorandum – there is no Exhibit W – are correspondence between Dr. Hölscher and a lawyer for CHI. As I have already noted, the fact that a lawyer represents both the parent corporation and one or more of its subsidiaries does not by itself subject the parent to the jurisdiction of the courts in a forum when the subsidiary is subject to jurisdiction. None of these exhibits could possibly be construed to support the assertion that CHI was involved in deciding to continue to make and sell the Alaris system after Dr. Hölscher's letter was received; the exhibits following the letter from Dr. Hölscher merely inform him that the lawyer will "have discussions with our outside counsel and counsel for the [] business unit that sells the MEDLEY product" and that "we are continuing our research with our U.S. and German outside counsel." Exhs. U and V to Docket No. 53.

The plaintiff further attempts to support its assertion with the statement that "the deposition testimony made clear that any decision regarding discontinuing the Alaris System would most likely have involved David Schlotterbeck, Dwight Winstead and Kerry Clark, all officers of CHI." Dismissal Opposition at 19. As CHI points out, Reply at 6, Kerry Clark did not join CHI until April 2006, while the correspondence to which the plaintiff refers took place in October and December 2005 and January 2006. Exhs. T-V to Docket No. 53. Further, the fact that any officers of CHI, who were also officers of CH303, would "most likely have [been] involved" in a decision to continue making the Alaris system after receipt of Dr. Hölscher's letter does not mean either that those individuals necessarily had "a substantial role" in that decision or that the decision was made by CHI rather than by CH303.[7]

---

[7] Nor does the testimony at the pages of the sealed deposition cited by the plaintiff in support of its assertion that Schlotterbeck, Winstead, and Clark support the assertion that all three "would most likely have [been] involved" in any such decision. Dismissal Opposition at 19. In addition, Winstead is not mentioned at all in the cited testimony.

11

Finally, and most important, the plaintiff cites no authority for this argument. In the absence of authority for the proposition that a decision to continue making and selling an allegedly infringing product after receipt of notice of infringement is sufficient to establish the purposeful availment prong of the legal test for exercise of personal jurisdiction, under the circumstances of this case, the plaintiff would have to provide this court with much stronger evidence to support its conclusion that CHI, rather than CH303, made such a decision.

### B.  Relatedness

The plaintiff's arguments concerning the relatedness prong of the test for the exercise of specific personal jurisdiction -- that is, that the plaintiff's claims arise out of the particular defendant's activities in the forum state -- rely entirely on its assumption that the activities of CH 303 may be imputed to CHI. Dismissal Opposition at 14, 15-16, 18-19. For the reasons already discussed, I reject that assumption. The plaintiff offers no independent basis from which to conclude that CHI engaged in any allegedly infringing acts in Maine.

### C.  Fair Play and Substantial Justice

Because I conclude that the plaintiff has not made the necessary showing on either of the first two elements of its claim that this court may exercise specific personal jurisdiction over CHI, I need not consider the third element.

The motion to dismiss Cardinal Health, Inc., from this action should be granted.

## II.  Motion to Transfer

Defendant CH303 moves to transfer this case to the Southern District of California. Cardinal Health 303, Inc.'s Motion to Transfer ("Transfer Motion") (Docket No. 36) at 1.  The plaintiff opposes this request, characterizing the Southern District of California as "one of the most expensive, congested, and slowest venues in the United States."  Plaintiff's Memorandum in Opposition to Cardinal Health 303, Inc.'s Motion to Transfer ("Transfer Opposition") (Docket No. 46) at 1.  I recommend that the court deny the motion.

### A.  Applicable Legal Standard

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A transfer pursuant to section 1404(a) lies within the discretion of the court.  *See, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The factors to be considered in the exercise of this discretion include the convenience of the parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation.  *See, e.g., Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987).  The fact that a prompt trial may be available in one of the districts at issue but not in the other is relevant to the inquiry.  *See, e.g., Ashmore v. Northeast Petroleum Div. of Cargill, Inc.*, 925 F. Supp. 36, 39 (D. Me. 1996).  The defendant bears "a substantial burden" of demonstrating the need for a change of forum.  *See, e.g., Demont & Assoc. v. Berry*, 77 F. Supp.2d 171, 173 (D. Me. 1999).  The evidence submitted by the defendant "must weigh heavily in favor of transfer" when this district is the plaintiff's "home forum."  *Id.*

## B. Discussion

CH303 begins by asserting that the plaintiff's choice of this forum should not be given any weight in connection with this motion, because the question of venue in a patent case is to be resolved under a legal standard different from that applicable in other types of cases. Transfer Motion at 3. CH303 is mistaken. It cites *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008), in this regard. But, the Federal Circuit in that case clearly applied Fifth Circuit law to the motion to transfer, "[b]ecause this petition does not involve substantive issues of patent law" and, in such instances, "the laws of the regional circuit in which the district court sits" apply. *Id*. at 1319. *See also Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (in patent-infringement cases, law of circuit in which a district sits controls as to procedural matters, including transfer of venue under section 1404(a)). Accordingly, it is First Circuit law developed under section 1404(a) that applies here.

Under First Circuit law, the party seeking transfer bears a "substantial burden" of demonstrating the need for a change. *Talarico v. Marathon Shoe Co.*, 2001 WL 366346 (D. Me. Apr. 12, 2001), at *1 (patent infringement case; citing *Demont & Assoc. v. Berry*, 77 F.Supp.2d 171, 173 (D. Me. 1999)). The evidence submitted by the party seeking transfer "must weigh heavily in favor of transfer" when this district is the plaintiff's home forum, *id*., as is the case here.

Of the factors listed in *Cianbro*, the order in which jurisdiction was obtained and the possibility of consolidation are not implicated here. The convenience to the plaintiff is high in Maine and to CH303, in California. The convenience to witnesses is approximately equal

between the two venues for witnesses connected with the defendant in Ohio,[8] higher for the witnesses from Germany in Maine, and higher in California for witnesses connected with the defendant in California. Where the witnesses located in California all appear to be CH303 employees, their convenience is not entitled to significant weight, because their attendance at trial may be secured by CH303. *Ashmore*, 925 F. Supp. at 38. Neither party has suggested that it will be necessary to serve subpoenas to assure the attendance of any specific, necessary witnesses.

CH303 devotes considerable time and effort to an argument about the "locus of operative facts" in this case, Dismissal Motion at 4-7, but that does not appear to be an element of the analysis under applicable First Circuit precedent. If that factor were considered, *see, e.g., Jackson Nat'l Life Ins. Co. v. Economou*, 557 F.Supp.2d 216, 220 (D.N.H. 2008), it would favor transfer, but an offsetting factor is that the plaintiff is a Maine corporation, First Amended Complaint ¶ 2, giving the state of Maine an interest in the matter that will be served if the case is resolved in the District of Maine. Maine is the plaintiff's "home turf," so the deference accorded its choice of forum is not to be diminished even further than it might be by the fact that the operative facts of the case have no material connection with Maine. *Vic Bailey Honda, Inc. v. American Honda Motor Co.*, 1989 WL 509315 (D.N.H. Oct. 18, 1989), at *2. In addition, at least some sales of the allegedly infringing Alaris system appear to have been made in Maine. Transfer Motion at 3.

Relevant documents are located in California, but may also be located in Maine and in Germany, so that factor does not appear to favor transfer. The relative financial strength of the parties to absorb the costs of litigation is a consideration in a transfer-of-venue analysis,

---

[8] CH303 says that "all" of its "company witnesses" are located in San Diego, California. Transfer Motion at 7. It is not clear whether it would call any CHI witnesses to testify, and whether any of those individuals might be located in Ohio.

*Ashmore*, 925 F. Supp. at 39, and that factor clearly favors denial of the motion to transfer, as CH303 appears far more capable of absorbing higher costs associated with a relatively distant venue than does the plaintiff.

In addition, the speed and lack of congestion of this court's docket as compared to that of the proposed transferee district, *see* Exh. 1 to Declaration of Chris A. Caseiro (Attachment 1 to Transfer Opposition), favors denial of the motion. *Ashmore*, 925 F. Supp. at 39. The fact that the Southern District of California has specific local rules for patent cases, Transfer Motion at 9-10, while this court does not, adds nothing material to the equation. This court has demonstrated repeatedly that it is capable of orderly, thorough, and timely disposition of patent cases, even without the assistance of patent-specific rules of procedure. The courts of both districts would be applying federal patent law, so either court's familiarity with the law governing the dispute is not a factor in this instance.

On balance, CH303 has not carried its "significant burden" of demonstrating that transfer of this action to the Southern District of California is required.[9] I recommend that the motion to transfer be denied.

### III. Conclusion

For the foregoing reasons, I recommend that the motion of defendant CHI to dismiss (Docket No. 30) be **GRANTED** and that the motion of defendant CH303 to transfer (Docket No. 36) be **DENIED.**

---

[9] I reject CH303's suggestion that this action should be transferred because of the plaintiff's "need for jurisdictional discovery," and that the plaintiff should have "been prepared to demonstrate jurisdiction upon filing its suit," and that its need for such discovery somehow undercuts the fact that the case will come to a conclusion in this district sooner that it will in the proposed transferee district. Cardinal Health 303, Inc.'s Reply in Support of Motion to Transfer Action (Docket No. 48) at 6.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of July, 2009.

                                                  /s/  John H. Rich III
                                                  John H. Rich III
                                                  United States Magistrate Judge